IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOY PINUELA ) | |
| ) | |
| Plaintiff, ) | Case No. 15 C 10955 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| LOYOLA UNIVERSITY MEDICAL CENTER, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joy Pinuela has sued her former employer, Loyola University Medical Center, alleging that her employment was terminated because of her race (Asian) and national origin (Filipino), and in retaliation for having complained about the alleged discrimination, all in violation of Title VII of the Civil Rights Act of 2964 as amended, 42 U.S.C. § 2000e et seq. Defendant has moved for summary judgment. For the reasons described below, the motion is granted.

## FACTS

Plaintiff was hired by defendant on July 8, 2013, as a nurse case manager. Her job included working with physicians and other staff to establish an appropriate plan of care, monitor patient progress and intervene as necessary to ensure quality services, act as patient advocate, educate the patient/family regarding available care options, and to facilitate a safe and effective discharge. The nurse case manager functions as an "air traffic controller," assessing every patient, every chart, every day, to ensure that the patient has everything coordinated prior to discharge, including medications, follow up appointments, and home health care. The nurse case manager makes all of the arrangements for discharge.

Plaintiff received her initial annual review in August 2014. The review was drafted by the Clinical Team Lead, Jeanne St. Mary, and reviewed and signed by Donna Hopkins, Director of the Case Management Department. The review conclusion was "Improvement Required," listing certain areas for improvement including: creation of a discharge plan that is achievable and consistent with the patient's needs; and ensuring that the plan of care for patients is understandable by peers who must cover for her during absences. Based on the review, plaintiff was scheduled for a 90 day re-evaluation.

The re-evaluation occurred on November 25, 2014. It was again prepared by St. Mary, but was reviewed, revised, and approved by the Administrative Director, Maria Hill. The re-evaluation again concluded that plaintiff was not meeting expectations. The review was based on discussions with co-workers and patient complaints. Several patients had requested another case manager. One patient's family complained that it was difficult to get plaintiff to return calls and that when she did she was curt and indicated that transportation was no longer her problem.

St. Mary met with plaintiff on November 25, 2014, to discuss the re-evaluation. At that meeting, plaintiff claims that she told St. Mary "I feel like my voice is never heard," to which St. Mary responded something like "you have to do better to be heard. You're quite a small person." Plaintiff claims that from that point on she knew that St. Mary disliked her because she was Asian and Filipino, because "Asians are small." She claims to have told St. Mary that being small "doesn't have anything to do with my job," but did not tell St. Mary that she considered the statement discriminatory. St. Mary denies making the statement, which forms the sole basis for plaintiff's discrimination claims. As a result of the re-evaluation, plaintiff was placed on a 90 day "Performance Improvement Plan."

2

On December 10, 2014, plaintiff emailed Human Resources Manager Karin Patel to complain about the re-evaluation. In that complaint, plaintiff made no mention of St. Mary's purported discriminatory comment, and made no other claim of discrimination. Instead, the whole tenor of the email was to complain about St. Mary's leadership abilities and competence in her job. She accused St. Mary of failing to investigate plaintiff's side of the complaints against her and even accused St. Mary of falling asleep in group meetings.

On February 9, 2015, St. Mary received a call from a patient complaining about plaintiff having failed to arrange transportation home for the patient at no cost as plaintiff stated she would do, and also having failed to return three voice messages. After the patient called administration and was transferred to plaintiff, the patient claimed that plaintiff "was rude, was screaming at her and made her feel humiliated," ultimately telling the patient that the bill was her responsibility and hanging up. Plaintiff denies that this event happened, but cannot deny that St. Mary received the complaint.

Shortly after that call, Jessica Pawlowski started as the new Director of the Case Management Department. She was informed of the February 9, 2015, patient complaint. Pawlowski met with plaintiff to address that complaint, but felt that plaintiff would not take accountability and did not think she had done anything wrong. Pawlowski decided that she wanted to give plaintiff a fresh start, so instead of issuing a corrective action she simply "provided coaching and extended plaintiff's Performance Improvement Plan an additional 30 days." There were no complaints about plaintiff during those additional 30 days.

On April 9, 2015, one of plaintiff's co-workers complained to Pawlowski about plaintiff's attitude and performance, stating that plaintiff failed to follow through on necessary

3

tasks and that co-workers spent time double checking plaintiff's work. The co-worker also told Pawlowski about a family's complaint that plaintiff "did not explain things well, confused them, and had lack of compassion," and another patient's request that plaintiff not work with her anymore because plaintiff was too confusing.

On April 13, 2015, Pawlowski received another email from another of plaintiff's co-workers, complaining about plaintiff's work, including plaintiff's failure to timely secure prescriptions for medications and failure to follow up and communicate with co-workers. Plaintiff disputes the complaints described in these emails, and claims that Pawlowski instructed the whole department to keep close "surveillance" on plaintiff.

Based on the complaints and her concerns about plaintiff's performance and attitude, Pawlowski, after consulting with the Administrative Director and Human Resources Manager, issued a written warning to plaintiff on April 14, 2015.

Six days later, on April 20, 2015, plaintiff submitted a complaint of racial harassment to Human Resources. This complaint was the first time that plaintiff ever mentioned St. Mary's alleged "small person" statement that plaintiff claims was made five months earlier, three months before Pawlowski started. Plaintiff's complaint essentially alleges that all of the complaints against her were made up and were being held against her because of her race.

Plaintiff's complaint was forwarded to the Assistant Director of Employee Relations, Pamela Fletcher, who met with plaintiff on April 24. At that meeting, plaintiff confirmed that her race discrimination claims were based on St. Mary's statement, that she had not previously reported St. Mary's statement, and that neither St. Mary nor anyone else made any other race-based offensive comments to her. Plaintiff's appeal of her written warning was denied by both

the Administrative Director of the Department, Maria Hill, and the Vice-President over that Department, Pradiptu Komanduri.

Pawlowski received four additional complaints about plaintiff in late May and June 2015. The complaints were from co-workers and physicians, and included failing to secure medications for patients prior to discharge, providing inaccurate information to team members about patient transportation, and failing to complete a post-acute care plan. Plaintiff was issued a final warning on June 29, 2015, that included a "Detailed Action Plan" (a Performance Improvement Plan), to be completed by August 26, 2015.

Plaintiff disputes the truthfulness of the Detailed Action Plan, but does not have any evidence to dispute that she did not successfully complete it. Pawlowski received four more complaints about plaintiff in August and early September, including a complaint by a senior resident that plaintiff caused a "panic" in the department by failing to timely secure necessary medications, a complaint by a patient's daughter that plaintiff rushed them to make decisions, a complaint by a fourth year resident that plaintiff failed to communicate the home health plan, upsetting the patient and the family, and another complaint by that same resident that plaintiff failed to make arrangements for the delivery of antibiotics upon discharge.

As a result of the continuing complaints, Pawlowski, in consultation with the Administrative Director and Human Resources Manager, terminated plaintiff's employment on September 11, 2015.

## **DISCUSSION**

Defendant has moved for summary judgment on all counts. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the burden of establishing both elements, Becker v. Tenebaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990), and all reasonable inferences are drawn in the non-movant's favor. Fisher v. Transco Services - Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992). If the movant satisfies its burden, then the non-movant must set forth specific facts showing there is a genuine issue for trial. Nitz v. Craig, 2013 WL 593851, *2 (N.D. Ill. Feb. 12, 2013). In doing so, the non-movant cannot simply show some metaphysical doubt as to the material facts. Pignato v. Givaudan Flavors Corp., 2013 WL 995157, *2 (N.D. Ill. March 13, 2013) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Summary judgment is inappropriate when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Plaintiff claims that she was terminated because she is Asian and Filipino. Title VII forbids an employer from discharging any individual on the basis of race or national origin. 42 U.S.C. §2000e-(a)(1). Generally, a plaintiff making such a claim can defeat summary judgment in one of two ways. First, plaintiff can point to sufficient evidence in the record, whether called direct, indirect or circumstantial, from which a reasonable jury could conclude that defendant fired her because of her race or national origin. This is the standard way to defeat a motion for summary judgment as recently reiterated by the Seventh Circuit in Ortiz v. Werner Enterprises, Inc., 834 F.3d 760, 764 (2016) (overruling the use of a "convincing mosaic" test.). Under this test, "evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself – or whether just the 'direct' evidence does so, or the 'indirect' evidence. . . . Relevant evidence must be considered and irrelevant evidence discarded, but no

6

evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'" Id. at 765.  As Ortiz makes clear, however, id. at 766, a plaintiff may also choose to defend a summary judgment motion using the burden shifting framework created by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under this approach, the plaintiff must first present evidence to establish a prima facie case: (1) that she is a member of a protected class; (2) she was satisfying her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside her protected class were treated more favorably.  If the plaintiff satisfies this initial burden, then the employer must articulate a legitimate non-discriminatory reason for the adverse action.  The burden then shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual.  See Andrews v. CBOCS West, Inc., 743 F.3d 230, 234 (7th Cir. 2014) (overruled in part by Ortiz, 834 F.3d at 765-66).  As the Seventh Circuit has made clear, however, whichever method is used "the fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination." Bass v . Joliet Public School Dist. No. 86, 746 F.3d 835, 840 (7th Cir. 2014).

In the instant case, the answer to that fundamental question is a resounding no.  First, plaintiff's only evidence of discrimination is her claim that St. Mary stated that she was "quite a small person."  Even if St. Mary made that statement, and even if it is considered discriminatory, this lone statement made ten months prior to plaintiff's discharge, and not made by the decision maker, is insufficient for a jury to conclude that plaintiff's termination was based on her race or national origin.  Plaintiff's claim that Pawlowski, when she learned of St. Mary's statement, began a conspiracy to get plaintiff fired, is unsupported by the record evidence.  It is true that

7

plaintiff disputes the underlying facts of each of the vast number of complaints made against her, but she cannot dispute that the complaints were made. And those complaints came not just from persons under Pawlowski's control, but from patients, patients' families, residents, and physicians. There is simply nothing to suggest that these complaints were fabricated or somehow encouraged by Pawlowski. Indeed, there is no evidence that Pawlowski harbored any animus towards plaintiff, racial or otherwise. The record discloses that Pawlowski gave plaintiff every opportunity to improve her performance. Plaintiff's response to the complaints is similar to her theory here – she did not do it, so everyone must be against her. The record demonstrates otherwise.

Nor can plaintiff's case survive under the McDonnell Douglas framework. Obviously, she has no problem establishing that she is in a protected class and that she suffered an adverse employment action. That, however, is as far as she gets. She cannot establish that she was meeting her employer's legitimate expectations, and even is she could, she has not identified any similarly situated employee outside of her protected classes that was treated more favorably. Indeed, the one nurse case manager that plaintiff claims was making similar or more egregious mistakes, and about whom plaintiff complained, was Kim Quach. According to plaintiff, Pawlowski overlooked Quach's problems while focusing on plaintiff. Yet, Quach is also Asian of Filipino national origin, which eliminates her as a legitimate comparator, and hurts rather than helps plaintiff's claim.

Moreover, even if plaintiff could establish a prima facie case, there is no evidence that defendant's legitimate non-discriminatory reason for the discharge, that plaintiff was not performing, is false. There were simply too many complaints about plaintiff, from too many

sources, for defendant to ignore. There is no evidence from which a jury could conclude that the discharge was based on prohibited discrimination.

Finally, this lack of evidence described above also dooms plaintiff's claim of retaliation. There is no evidence that Pawlowski's actions were based on plaintiff's complaint about St. Mary's statement.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (Doc. 21) is granted.

**ENTER:** **December 28, 2016**

_____
**Robert W. Gettleman**
**United States District Judge**